AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the

JUL 2 8 2011

Eastern District of Virginia

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.  1:17SW431 |
| LG MODEL LGM5631 CELLULAR TELEPHONE LOCATED AT DEA WASHINGTON FIELD OFFICE, ANNANDALE, VIRGINIA | ) ) ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Please see Attachment A (Property to be Searched)

located in the _____ Eastern _____ District of _____ Virginia _____ , there is now concealed *(identify the person or describe the property to be seized)*:
Please see Attachment B (Particular Things to be Seized)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | Possession with Intent to Distribute a Controlled Substance |

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA/SAUSA:
Jonathan Fahey/Sean Wright

_____
*Applicant's signature*

John Eliff, Task Force Officer, DEA
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/28/17

Theresa Carroll Buchanan
United States Magistrate Ju....
_____
*Judge's signature*

City and state:  Alexandria, Virginia

Hon. Theresa Carroll Buchanan, U.S. Magistrate Judge
_____
*Printed name and title*

## ATTACHMENT A

The property to be searched is an LG Model LGM5631 Cellular Phone, serial number 511CYPY783120, hereinafter referred to as "the Device." The Device is currently located in an evidence locker located at the DEA Washington Division Office located in Annandale, Virginia 22003.  This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.    All records on the Device described in Attachment A that relate to violations of **21 U.S. Code § 841** and involve **Christopher GARNER** since **October 2016**, including:

   a.   lists of customers and related identifying information;

   b.   types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

   c.   any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

   d.   all bank records, checks, credit card bills, account information, and other financial records.

2.    Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

IN THE MATTER OF THE SEARCH OF

LG Model LGM5631
S/N 511CYPY783120

CURRENTLY LOCATED AT
DEA Evidence Locker
Washington Field Office
Annandale, Virginia 22003

JUL 2 8 2017

Case No.  1:17-SW-431

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION UNDER RULE 41 FOR A
## WARRANT TO SEARCH AND SEIZE

I, **John Eliff** being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am currently assigned as a Task Force Officer with the Drug Enforcement

Administration ("DEA) HIDTA Group 10 in Annandale Virginia, and have been in this position

since January 17, 2017.  I have been employed with the Alexandria Police Department since July

16, 2007 and am currently assigned to the Vice/Narcotics Section as a Detective, with the

primary function of investigating mid-to upper-level narcotics trafficking.  I have conducted and

participated in numerous narcotics investigations resulting in the arrest and convictions of drug

distributors, which has led to the seizure of controlled substances, currency and other evidence

affiliated with narcotic violations.  I have testified in the Alexandria General District Court and

Alexandria Circuit Court.  I have received extensive training in criminal law, investigations, drug

identification, distribution methods, undercover operations and drug interdiction from the

Northern Virginia Criminal Justice Training Academy, the DEA, the Federal Bureau of

Investigations, the Northeast Counterdrug Training Center ("NCTC"), Law Enforcement

Training Associated (L.E.T.A), and Pat McCarthy's Street Crimes Seminar, among others.

2.      I submit this affidavit in support of an application under Rule 41 of the Federal

Rules of Criminal Procedure for a search warrant authorizing the examination of property—an

electronic device—which is currently in law enforcement possession, and the extraction from

that property of electronically stored information described in Attachment B.

3.      This affidavit is intended to show only that there is sufficient probable cause for

the requested warrant and does not set forth all of your affiant's knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.      The property to be searched is a LG Model LGM5631 Cellular Phone, serial

number 511CYPY783120, hereinafter the "Device." The Device is currently located in a DEA

evidence locker at the Washington Field Office in Annandale, Virginia, within the within the

Eastern District of Virginia. The DEA seized the Device during the execution of a Washington,

D.C., Superior Court search warrant at 4645 6th Street, Unit 2 S.E., Washington, D.C., 20032.

5.      The applied-for warrant would authorize the forensic examination of the Device

for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6.      In April 2017, I received information from a confidential and reliable source

(herein referred to as CS-1) regarding cocaine trafficking in the Washington, D.C., Metropolitan

area. CS-1 stated that he/she is aware of an unidentified black male who is selling cocaine at

2

multiple locations in and around the Washington, D.C., Metropolitan area. CS-1 informed me of the phone number utilized by the unidentified black male to coordinate his ongoing enterprise to distribute cocaine.

7.     While utilized various law enforcement resources, I was able to positively identify the black male as possibly being Christopher Anthony GARNER. I also ran a query with the Washington, D.C., Department of Motor Vehicles and it revealed that GARNER has a listed address of 4645 6th Street, Unit 2 S.E., Washington, D.C., 20032.

8.     CS-1 was shown a photograph of Christopher Anthony GARNER and positively identified GARNER as the subject he/she knows is selling him/her cocaine.

9.     During the second week of May 2017, I met with CS-1 at an undisclosed location. At my direction, CS-1 arranged to purchase a quantity of cocaine from GARNER. CS-1 contacted GARNER on his phone number and coordinated a purchase of cocaine. CS-1 was search and found to be free of both money and contraband. CS-1 was subsequently given a quantity of pre-recorded DEA Official Advance Funds. Prior to CS-1 and GARNER meeting, members of Group 10 observed GARNER standing inside his residence at 4645 6th Street, Unit 2 S.E., Washington, D.C., 20032. A short time later, I observed CS-1 travel from their undisclosed location to a predetermined meeting location, where he/she was observed meeting with GARNER. After a brief interaction, CS-1 and GARNER were observed parting ways with CS-1 responding back to the undisclosed location. CS-1 was under constant surveillance by members of Group 10 from the time he/she left the undisclosed location to the time he/she returned. Once on scene, he/she provided me with a quantity of suspected cocaine. CS-1 was

3

searched again and found to be free of money and contraband. The suspected cocaine was field tested using an approved test kit and the results were positive for the presence of cocaine.

10.      During the fourth week of May 2017, I met with CS-1 at an undisclosed location. I directed CS-1 to arrange a purchase of cocaine from GARNER. CS-1 made contact with GARNER on his listed phone number and arranged to purchase a quantity of cocaine. CS-1 was search and found to be free of both money and contraband. CS-1 was then provided with a quantity of pre-recorded DEA Official Advance Funds. Again, I observed CS-1 travel from their undisclosed location, to a pre-determined meeting location, where he/she met with GARNER. After a short interaction, CS-1 left the pre-determined meeting location and responded back to an undisclosed location. Members of Group 10 had constant surveillance on CS-1 during the purchase. Once on scene at the undisclosed location, CS-1 immediately provided me with a quantity of suspected cocaine. CS-1 confirmed that the suspected cocaine was purchased from GARNER. CS-1 was searched again and was found to be free of money and contraband. A portion of the suspected cocaine was field tested and the results were positive for the presence of cocaine.

11.      During the second week of June 2017, I met with CS-1 at an undisclosed location. Following my direction, CS-1 arranged to purchase another quantity of cocaine from GARNER. CS-1 contacted GARNER on his listed phone number and arranged to make the purchase of cocaine. CS-1 was search and found to be free of both money and contraband. CS-1 was subsequently provided with a quantity of pre-recorded DEA Official Advance Funds. Again, I observed CS-1 travel from their undisclosed location, to a predetermined meeting location, where he/she met with GARNER. After a brief interaction, CS-1 returned to the pre-determined

4

location and responded back to an undisclosed location. Members of Group 10 maintained constant surveillance on CS-1 during the purchase. Once on scene, CS-1 handed me a quantity of suspected cocaine. CS-1 confirmed that the suspected cocaine was purchased from GARNER. CS-1 was searched again and was found to be free of money and contraband. A portion of the suspected cocaine was field tested and the results were positive for the presence of cocaine.

12.     Based on the above stated probable cause, I presented a search warrant to the Washington, D.C., Superior Court requesting to search the residence of 4645 6th Street, Unit 2 S.E., Washington, D.C., 20032. On June 14, 2017, the search warrant was signed by the Honorable Ronald P. Wertheim, authorizing the search.

13.     On June 21, 2017, members of Group 10, with the assistance of DEA's Special Response Team ("SRT"), executed the search warrant at GARNER'S residence. While making entry to the residence, SRT members located GARNER who had unsuccessfully attempted to flush the suspected narcotics down the toilet. Once the residence was secured, Group 10 members executed the search warrant and subsequently located approximately 47 grams of suspected crack cocaine (field tested positive for cocaine), approximately 42.5 grams of suspected heroin (field tested positive for heroin), two digital scales, multiple empty plastic baggies, and two cellular phones. It should be noted that portions of the suspected crack cocaine and heroin were individually packed for resale. It should also be noted that the individually packaged suspected crack cocaine and heroin were in the same plastic bags that were described above. The two cell phones were transported to DEA's Washington Field Office in Annandale, Virginia, within the within the Eastern District of Virginia.

5

14. At the conclusion of the search, GARNER provided a post-Miranda interview detailing his involvement in the distribution of crack cocaine and heroin. GARNER explained to me that he would purchase large quantities of crack cocaine and heroin and break them down into smaller quantities for resale. GARNER said he has been selling crack cocaine and heroin since October 2016. GARNER also noted that he would contact his sources of supply via cellular phone to arrange the purchases of crack cocaine and heroin.

15. Based on my training and experience, I know that drug traffickers often use cellular telephones to conduct their illicit business. These cellular phones often contain telephone numbers, email addresses, push-to-talk numbers, location services, and other contact information for conspirators within the drug trafficking organization. In addition, these phones may contain text messages which may constitute evidence of the crime of conspiracy to distribute cocaine.

16. The Device is currently in the lawful possession of the DEA. It was seized during the execution of a Washington, D.C., Superior Court search warrant at 4645 6th Street, Unit 2 S.E., Washington, D.C., 20032.

17. The Device is currently located in an evidence locker at the DEA's Washington Field Office located in Annandale, Virginia. Based on my training and experience, I knows that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into DEA possession.

6

## TECHNICAL TERMS

18.    Based on my training and experience, I use the following technical terms to

convey the following meanings:

     a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular

telephone) is a handheld wireless device used for voice and data communication

through radio signals.  These telephones send signals through networks of

transmitter/receivers, enabling communication with other wireless telephones or

traditional "land line" telephones.  A wireless telephone usually contains a "call

log," which records the telephone number, date, and time of calls made to and

from the phone.  In addition to enabling voice communications, wireless

telephones offer a broad range of capabilities.  These capabilities include: storing

names and phone numbers in electronic "address books;" sending, receiving, and

storing text messages and e-mail; taking, sending, receiving, and storing still

photographs and moving video; storing and playing back audio files; storing

dates, appointments, and other information on personal calendars; and accessing

and downloading information from the Internet.  Wireless telephones may also

include global positioning system ("GPS") technology for determining the

location of the device.

     b.  Digital camera:  A digital camera is a camera that records pictures as digital

picture files, rather than by using photographic film.  Digital cameras use a

variety of fixed and removable storage media to store their recorded images.

Images can usually be retrieved by connecting the camera to a computer or by

7

connecting the removable storage medium to a separate reader. Removable

storage media include various types of flash memory cards or miniature hard

drives. Most digital cameras also include a screen for viewing the stored images.

This storage media can contain any digital data, including data unrelated to

photographs or videos.

c.  Portable media player:  A portable media player (or "MP3 Player" or "iPod") is a

handheld digital storage device designed primarily to store and play audio, video,

or photographic files. However, a portable media player can also store other

digital data. Some portable media players can use removable storage media.

Removable storage media include various types of flash memory cards or

miniature hard drives. This removable storage media can also store any digital

data. Depending on the model, a portable media player may have the ability to

store very large amounts of electronic data and may offer additional features such

as a calendar, contact list, clock, or games.

d.  GPS: A GPS navigation device uses the Global Positioning System to display its

current location. It often contains records the locations where it has been. Some

GPS navigation devices can give a user driving or walking directions to another

location. These devices can contain records of the addresses or locations involved

in such navigation. The Global Positioning System (generally abbreviated

"GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite

contains an extremely accurate clock. Each satellite repeatedly transmits by radio

a mathematical representation of the current time, combined with a special

sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.   PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

9

19. Based on your my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, a digital camera, a portable media player, a GPS navigation device, a PDA, and can access the internet. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

20. Based on my knowledge, training, and experience, he knows that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

21. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

  a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

  b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

10

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22. *Nature of examination*: Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, which might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

11

23.    *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit that there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

24.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

John Eliff
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me    /s/
on July 28, 2017:    Theresa Carroll Buchanan
United States Magistrate Judge

The Honorable Theresa C. Buchanan
United States Magistrate Judge
Alexandria, Virginia

12

## **ATTACHMENT A**

The property to be searched is an LG Model LGM5631 Cellular Phone, serial number 511CYPY783120, hereinafter referred to as "the Device." The Device is currently located in an evidence locker located at the DEA Washington Division Office located in Annandale, Virginia 22003. This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of

**21 U.S. Code § 841** and involve **Christopher GARNER** since **October 2016**, including:

     a.  lists of customers and related identifying information;

     b.  types, amounts, and prices of drugs trafficked as well as dates, places, and
        amounts of specific transactions;

     c.  any information related to sources of drugs (including names, addresses, phone
        numbers, or any other identifying information);

     d.  all bank records, checks, credit card bills, account information, and other financial
        records.

2.      Evidence of user attribution showing who used or owned the Device at the time
the things described in this warrant were created, edited, or deleted, such as logs, phonebooks,
saved usernames and passwords, documents, and browsing history.